[646 NYS2d 799]

NITZA TUFINO, Appellant, v NEW YORK HOTEL AND MOTEL TRADES COUNCIL AND HOTEL ASSOCIATIONS OF THE NEW YORK CITY AFL-CIO LOCAL 6, Respondent and Third-Party Plaintiff-Respondent. JOHN COYNE et al., Third-Party Defendants-Respondents.

First Department, August 22, 1996

## APPEARANCES OF COUNSEL

*Gerald J. Mondora* for appellant.

*Elisa T. Gilbert* of counsel *(Ronald J. Theleen* on the brief; *Mound, Cotton & Wollan,* attorneys), for respondent and third-party plaintiff-respondent.

*Martin B. Adams* of counsel *(Kopff, Nardelli & Dopf,* attorneys), for John Coyne, third-party defendant-respondent.

*Douglas B. Stebbins* of counsel *(McAloon & Friedman, P. C.,* attorneys), for Bendo, third-party defendant-respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Decedent was a member of the New York Hotel and Motel Trades Council and Hotel Associations of the New York City AFL-CIO Local 6 (Union), which administers and operates an Employee Retirement Income Security Act of 1974 (29 USC 1001 *et seq.* [ERISA]) qualified, employer-funded comprehensive medical plan for its members. In September 1987, when she was 65 years of age, decedent underwent surgery for a mitral valve replacement. Her hospital stay was uneventful and she recovered without incident.

Following surgery, decedent came under the care of physicians, including Dr. John Coyne, a cardiologist, and Dr. Dominick Bendo, both third-party defendants herein, at the medical clinic operated by the Union. In this pain and suffering and wrongful death action based on medical malpractice, plaintiff, individually and as administratrix of the estate of her mother, decedent, alleges that the Union is vicariously responsible, through its doctors, for failing to monitor anticoagulants administered to decedent, causing her to suffer a subdural hematoma from which she died on December 12, 1987. Aside from the pain and suffering and wrongful death cause of action (first), plaintiff asserts a second cause of action for lack of informed consent and a third cause of action for the plaintiff daughter's "bystander", i.e., zone of danger, emotional injuries. The Union impleaded the third-party defendant doctors, against whom plaintiff never amended the complaint to assert a direct cause of action.

When plaintiff moved, over one year after the commencement of the action, to file, nunc pro tunc, a notice of medical

malpractice action, the Union cross-moved for, and plaintiff did not oppose, dismissal of the first cause of action for wrongful death on Statute of Limitations grounds and the third cause of action for emotional distress for failure to state a cause of action. The motion and cross motion were granted (Kristin Booth Glen, J.).* Three years later, the Union and Dr. Coyne moved separately for summary judgment dismissing the complaint and the third-party complaint, respectively, on the ground, *inter alia*, that plaintiff's State law claims based on malpractice in the provision of medical care under an employee benefit plan are preempted by ERISA. The IAS Court, taking note of the broad preemptive scope of ERISA (*see, Matter of Morgan Guar. Trust Co. v Tax Appeals Tribunal*, 80 NY2d 44, 49) and relying on several United States District Court cases, agreed and dismissed the complaint. This appeal followed. We reverse.

ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" (29 USC § 1144 [a]). This provision, the Supreme Court has noted, is "deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" (*Pilot Life Ins. Co. v Dedeaux*, 481 US 41, 46, quoting *Alessi v Raybestos-Manhattan, Inc.*, 451 US 504, 523.) In *Shaw v Delta Air Lines* (463 US 85, 97), "[t]he phrase 'relate to' was given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" (*Metropolitan Life Ins. Co. v Massachusetts*, 471 US 724, 739.) It has been held, however, that some State actions "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." (*Shaw v Delta Air Lines*, 463 US, *supra*, at 100, n 21.) Thus, the act does not preempt lawsuits against ERISA pension plans for "run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan." (*Mackey v Lanier Collection Agency & Serv.*, 486 US 825, 833.)

The Union and the moving third-party defendant rely on several Federal District Court decisions which are part of a host of cases holding that a claim against a health maintenance organization (HMO) based on vicarious liability for the

---

* There is a dispute as to whether the pain and suffering cause of action survived the dismissal motion, the Union's new attorneys taking the position that that cause of action was also dismissed. It is not altogether clear that a pain and suffering claim was even asserted.

alleged medical malpractice of one of its providers "relate[s] to" the employee benefit plan and is preempted by ERISA. (*See, e.g., Pomeroy v Johns Hopkins Med. Servs.,* 868 F Supp 110 [D Md]; *Visconti v U.S. Health Care,* 857 F Supp 1097 [ED Pa], *revd,* 57 F3d 350, *cert denied sub nom. U.S. Healthcare v Dukes,* — US —, 116 S Ct 564; *Dukes v United States Health Care Sys.,* 848 F Supp 39 [ED Pa], *revd* 57 F3d 350, *cert denied* — US —, 116 S Ct 564; *Nealy v U.S. Healthcare HMO,* 844 F Supp 966 [SD NY]; *Ricci v Gooberman,* 840 F Supp 316 [D NJ].) These courts have generally reasoned that a vicarious liability claim based on medical malpractice implicates the providing of benefits under the plan and, thus, the claim requires scrutiny of the plan to determine its obligations and the relationship between the plan and its doctors. (*See, Pomeroy v Johns Hopkins Med. Servs.,* 868 F Supp, *supra,* at 113-114.)

A number of other Federal District Courts, however, have held that ERISA does not preempt a vicarious liability-based medical malpractice claim against an HMO. (*See, e.g., Jackson v Roseman,* 878 F Supp 820 [D Md]; *Haas v Group Health Plan,* 875 F Supp 544 [SD Ill]; *Dearmas v Av-Med, Inc.,* 865 F Supp 816 [SD Fla]; *Kearney v U.S. Healthcare,* 859 F Supp 182 [ED Pa]; *Paterno v Albuerne,* 855 F Supp 1263 [SD Fla]; *Smith v HMO Great Lakes,* 852 F Supp 669 [ND Ill]; *Elsesser v Hospital of Philadelphia Coll. of Osteopathic Medicine,* 802 F Supp 1286 [ED Pa]; *Independence HMO v Smith,* 733 F Supp 983 [ED Pa].)

The United States Court of Appeals for the Tenth Circuit, in *Pacificare of Okla. v Burrage* (59 F3d 151), held that a vicarious liability malpractice claim does not involve the administration of the plan's benefits or their level or quality but rather, the doctor's alleged negligent care and the agency relationship between the doctor and the HMO. "[R]eference to the plan to resolve the agency issue does not implicate the concerns of ERISA preemption." (*Supra,* at 155.) On the other hand, in *Corcoran v United Healthcare* (965 F2d 1321, *cert denied* 506 US 1033), the Fifth Circuit found preemption in a situation where a company that provided "utilization review" services to a pregnant employee's medical benefit plan refused to authorize hospitalization, despite her doctor's recommendation, and instead authorized limited home nursing care. The fetus went into distress and died at a time when the nurse was off duty. The court held that while the utilization review company gave medical advice, it did so "in the context of making a determination about the availability of benefits under the plan" (*supra,* at 1331). Thus, any medical decision was part and parcel of the

decision process as to the scope of benefits available under the plan. In such a situation, the court held, preemption is mandated. Similarly, in *Tolton v American Biodyne* (48 F3d 937, 942 [6th Cir]), the court held that the claims asserted, which included a wrongful death action based on the employee's suicide after there had been a denial of psychiatric benefits, were preempted by ERISA since they arose out of the refusal to authorize benefits under the plan and, therefore, " 'relate[d] to' " the plan.

In *Dukes v U.S. Healthcare* (57 F3d 350, *cert denied* — US —, 116 S Ct 564, *supra),* the Third Circuit held that claims against HMOs based on the medical malpractice of their affiliated hospitals and medical personnel were not subject to removal since, under the " 'well-pleaded complaint rule' " (*Metropolitan Life Ins. Co. v Taylor*, 481 US 58, 63), a cause of action " 'arises under' " Federal law, and removal is proper, only if a Federal question is presented on the face of the properly pleaded complaint. (*Dukes v U.S. Healthcare*, 57 F3d, *supra,* at 353, citing *Franchise Tax Bd. v Laborers Vacation Trust*, 463 US 1, 9-12.) In that regard, the court noted, the claims asserted in *Dukes* merely attacked the quality of the benefits received; no claim of an erroneous withholding of benefits due was asserted; nor was any enforcement of rights under the terms of the respective plans or clarification of rights to future benefits sought. As the *Dukes* court stated, "Nor does anything in the legislative history, structure, or purpose of ERISA suggest that Congress viewed § 502 (a) (1) (B) as creating a remedy for a participant injured by medical malpractice". (57 F3d, *supra,* at 357.) Quality control of plan benefits received by participants, the court held, "is a field traditionally occupied by state regulation and we interpret the silence of Congress as reflecting an intent that it remain such." (*Supra,* at 357.) Thus, the "complete preemption" exception to the well-pleaded complaint doctrine—where Congress so completely "preempt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character" (*Metropolitan Life Ins. Co. v Taylor*, 481 US, *supra,* at 63-64)—did not apply and the State court could address and resolve the preemption issue.

Similarly, in *Rice v Panchal* (65 F3d 637), the Seventh Circuit held that an employee's medical malpractice claim against a health care plan administrator, under a State law theory of respondeat superior, was not subject to complete preemption as an action to enforce his rights under ERISA since the plaintiff did not rest his claim on the terms of the plan and the issue of

whether the plan is liable for the medical malpractice of the provider would not require construing the ERISA plan.

The Second Circuit reached a similar conclusion in *Lupo v Human Affairs Intl.* (28 F3d 269). There, a participant brought a State court action for, *inter alia*, professional malpractice against a company that contracted to provide psychotherapy services in connection with his employer's ERISA health benefit plan. On appeal from the dismissal of the complaint on the ground of ERISA preemption, after removal from State court, the Second Circuit Court of Appeals, in applying the well-pleaded complaint rule, found that the complaint only asserted "what are facially state common law claims", none of which "bears any significant resemblance to those described in [29 USC] § 1132 (a) (1) (B)." (*Supra*, at 272.) As the Second Circuit has had occasion to note when it considered the issue of ERISA preemption as it related to the invocation of a State escheat statute, "[Laws] that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority—whose effect on ERISA plans is incidental." (*Aetna Life Ins. Co. v Borges*, 869 F2d 142, 146, *cert denied* 493 US 811.)

In the instant matter, as the complaint makes clear, plaintiff makes no claim challenging any administrative determination relating to the plan or the extent of its benefits. Plaintiff's claim is a narrow and focused one—the Union's doctors, its agents, were negligent in their treatment of decedent. Thus, the claim is of a type not preempted by ERISA and the complaint should not have been dismissed. (*Andujar v Lenox Hill Hosp.*, — AD2d —, 1996 NY Slip Op 03237 [1st Dept, Apr. 11, 1996].)

Plaintiff confines her argument on appeal to the assertion that where the medical malpractice complained of is covered by liability insurance ERISA's preemption provision does not apply. Since any damage recovery will be covered by insurance, plaintiff argues, her vicarious liability claim against the Union does not "relate to" the plan. Recognizing that this is an issue we need not reach in light of our determination that the claim is, in any event, not preempted, we nevertheless find that the argument is without merit. That an insurer and not the plan may ultimately bear the cost of any award against the plan has no bearing on whether a plaintiff's claims "relate to" the benefit plan. ERISA's preemptive effect was intended "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."

(*New York State Conference of Blue Cross & Blue Shield Plans v Travelers Ins. Co.*, 514 US —, —, 115 S Ct 1671, 1677-1678.) That payment of an award may derive from a source other than the plan is irrelevant to Congress's laudable goal of seeking uniformity in the administration of the plan.

Finally, we note that in its decision dismissing the complaint on preemption grounds, the IAS Court acknowledged some doubt as to whether the earlier order dismissing the first cause of action encompassed the personal injury claim. The order in question dismissed the "first and third causes of action (wrongful death action & daughter's cause of action)." In moving to dismiss those causes of action, the Union characterized, not unreasonably because of its lack of clarity, the first cause of action as one for wrongful death. Apparently, plaintiff's cross motion to amend the complaint, which the court in the order on appeal denied as moot, was apparently related to the argument that the personal injury aspect of the first cause of action was not dismissed. Since the IAS Court never reached the merits of this argument, the parties should be afforded an opportunity to develop this issue before the IAS Court and have it, as well as the third-party defendants' motion to sever, which was also denied as moot, resolved.

Accordingly, the judgment of the Supreme Court, New York County (Helen E. Freedman, J.), entered March 10, 1995, which dismissed the complaint and third-party complaint against John Coyne, M.D., should be reversed, on the law, without costs or disbursements, the complaint and said third-party complaint reinstated and the matter remanded for further proceedings.

ROSENBERGER, ELLERIN and MAZZARELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered March 10, 1995, reversed, on the law, without costs or disbursements, the complaint and third-party complaint reinstated and the matter remanded for further proceedings.